# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARBUZZ TOBACCO, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WISAM NAMOU, et al.,<br><br>Defendants. | CASE NO. 13CV1539-MMA (KSC)<br><br>**ORDER:**<br><br>**DENYING APPLICATION TO FILE THE ACTION UNDER SEAL;**<br><br>**DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER;**<br><br>**DENYING APPLICATION FOR A SEIZURE ORDER;**<br><br>**DENYING APPLICATION FOR SUBSTITUTE CUSTODIAN ORDER;**<br><br>**GRANTING APPLICATION FOR AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

On July 2, 2012, Starbuzz Tobacco, Inc. ("Plaintiff" or "Starbuzz") brought the instant copyright and trademark infringement action against Defendants Wisam Namou and Sukrat Namou ("Defendants"). Currently pending before the Court is

Plaintiff's application to file the action under seal, along with a separate ex parte motion for a temporary restraining order ("TRO"), an order to show cause ("OSC") why a preliminary injunction should not issue, a seizure order, an order prohibiting destruction of evidence, a substitute custodian order, and an expedited discovery order. For the reasons set forth below, the Court **DENIES** Plaintiff's application to file the action under seal; **DENIES** Plaintiff's ex parte motion for a TRO and related requests; and **GRANTS** Plaintiff's application for an OSC why a preliminary injunction should not issue.

## BACKGROUND

Plaintiff Starbuzz is a leading hookah tobacco manufacturer and distributor in the United States, with over ninety trademarks in the United States and trademark registrations in over thirty-three countries. Since its formation, Plaintiff has expanded its product line to include hookah accessories, cigars, charcoal, candles, air fresheners, energy drinks, and electronic cigarettes. On January 21, 2013, Plaintiff applied with the Copyright Office to register the design appearing on page 2 of Plaintiff's complaint (the "Copyrighted Design"). Plaintiff also uses the following trademarks that are registered for tobacco and related products and services: STARBUZZ (Reg. No. 3,113,110), STARBUZZ TOBACCO SINCE 2005 (Reg. No. 3,783,438), BLUE MIST (Reg. No. 3,619,407), CITRUS MIST (Reg. No. 3,695,500), CODE 69 (Reg. No. 3,695,438), DOUBLE APPLE (Reg. No. 4,020,760), PINK (Reg. No. 3,672,967), SAFARI MELON DEW (Reg. No. 3,619,357), and SEX ON THE BEACH (Reg. No. 3,838,818). Plaintiff has also applied to register various trademarks for electronic cigarettes including the marks STARBUZZ (Ser. No. 85/909,961) and BLUE MIST (Ser. No. 85/812,403) (collectively, the Registered Marks and Applications for Marks are referred to as the "Starbuzz Marks").

In June 2013, Plaintiff was informed by one of its distributors that Defendants were selling e-liquid products bearing labels with a design substantially similar to

the Copyrighted Design and some of the Starbuzz Marks. Plaintiff, however, does not produce e-liquid products. Upon receiving this information, the distributor proceeded to purchase three bottles of e-liquid products from Defendants' store, Pure Smoke Shop, located in Lakeside, California. Plaintiff later authorized an investigator to assess Defendants' activities and acquire additional evidence. The investigator purchased additional e-liquid products from Pure Smoke Shop and from Defendants' second store, Aztec Smoke Shop.

According to Plaintiff, the outside of the e-liquid products purchased from Defendants mimics the appearance of Starbuzz products. The products use Plaintiff's house mark "STARBUZZ," and prominently display a design substantially similar to the Copyrighted Design. Further, the e-liquid flavors are nearly identical to Starbuzz's trademarks for its popular flavored hookah tobacco.

Additionally, Defendants' products contain the following warning label:

> WARNINGS: Potentially fatal if ingested. Seek medical attention if ingestion or contact with skin/eyes occurs. Wash skin and/or flush eyes immediately if contact occurs."
>
> This product should not be used by persons under the age of 18 years of age. Store away from children, light, pets & heat with a container closed tightly. Consult a physician before use.

[Elhalwani Decl. ¶ 15.]

Plaintiff alleges that since it does not know the exact ingredients of the e-liquid products, it can only assume, based on the warnings, that the e-liquid products are indeed potentially fatal and harmful to consumers. Accordingly, Plaintiff insists that sales of the e-liquid products must be stopped immediately to avoid further potential death or injury. Moreover, Plaintiff alleges, any harm arising from the use of the e-liquid products will be unfairly and mistakenly attributed to Plaintiff, negatively impacting Plaintiff's reputation.

## DISCUSSION

**A.   Ex Parte TRO**

The standard for a TRO is the same as for a preliminary injunction. *See*

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A restraining order is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

With respect to issuing an ex parte TRO, Federal Rule of Civil Procedure 65(b)(1) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65 (emphasis added).

The United States Supreme Court has explained that the circumstances justifying the issuance of an ex parte TRO are extremely limited:

> The stringent restrictions imposed . . . by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974) (internal

citation omitted).

Consistent with the overriding concern articulated by the Supreme Court, the Ninth Circuit has stated that there are "very few" circumstances justifying the issuance of an ex parte TRO. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). For instance, notice may be excused where it "is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Id.* Or, notice may not be required where providing "notice to the defendant would render fruitless the further prosecution of the action" because the adverse party is likely to destroy evidence. *Id.*

In the context of trademark infringement, such cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing. *Reno Air*, 452 F.3d at 1131. To justify an ex parte proceeding on this ground, "the applicant must do more than assert that the adverse party would dispose of evidence if given notice." *Id.* "[P]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* (citation omitted).

Plaintiff first contends that an ex parte TRO is appropriate because there is a "clear and present danger that consumers will be physically harmed if Defendants are not immediately enjoined from distributing and selling their infringing products." [Mot. at 8.] Proceeding with normal notice and hearing procedures increases the risk that Defendants' dangerous products will reach the public or that Defendants will improperly dispose of the products without taking into account their hazardous nature. [*Id.*] Furthermore, Plaintiff argues that if anyone is harmed by the product, it will be erroneously blamed.

Plaintiff's argument fails to establish either the presence or immediacy of

harm necessary to issue an ex parte TRO. Plaintiff provides no evidence of the potential danger of the product other than the warning label. Yet, the presence of a warning label does not establish that the e-liquid creates a "clear and present danger" to consumers. Warning labels are ubiquitous, and serve to *decrease*, not increase, harm. Thus, the Court finds this argument to be purely speculative. So, to, is the corresponding argument that Plaintiff will be erroneously blamed should a consumer be injured by the product. But more relevant to the present discussion, Plaintiff fails to demonstrate why giving notice to Defendant of the pending TRO would increase these harms.

Second, Plaintiff contends that an ex parte TRO is appropriate because "[o]nce Defendants become aware of the weight of evidence against them, through a noticed application for temporary restraining order, they are likely to attempt to destroy or hide evidence of their wrongdoing." [Mot. at 9.] According to Plaintiff, "[t]he fact that [Defendants] operate two retail stores with a limited amount of inventory at each store will allow them to quickly and easily destroy or hide the infringing products and/or the means of making or obtaining such goods, as well as hide or destroy related business records, to avoid being caught with the illicit items and to further hide the extent of their infringing activities." [*Id.*][1]

However, Plaintiff has not submitted evidence demonstrating that "notice to the defendant[s] would render fruitless the further prosecution of the action." *Reno Air*, 452 F.3d at 1131. Plaintiff does not cite evidence showing that Defendants would disregard a Court order and dispose of or hide the allegedly infringing goods within the time it would take for a hearing. For instance, Plaintiff offers no evidence that Defendants have failed to appear in court when required or evidence suggesting

---

[1] The Court finds Plaintiff's reasons for proceeding ex parte to be contradictory: on the one hand, Defendants should not be given notice because "proceeding with normal notice and hearing procedures increases the risk that Defendants' dangerous products will reach the public . . . ." [Mot. at 8.] But on the other hand, if notice is given, Defendants will "destroy or hide the infringing products." [Mot. at 9.] If the products were destroyed or hidden, it is difficult to imagine how they would reach the public.

that Defendants have a history of disposing of evidence or that other individuals or entities similar (i.e., reasonably comparable) to Defendants have a history of destroying evidence. Instead, Plaintiff generally argues that "most infringers who are faced with such clear allegations of infringement and the imminent seizure of property and records are highly likely to destroy evidence in an effort to hide their wrongdoing. [Mot. at 9.] A declaration by Plaintiff's counsel, Natu Patel, was filed to support this assertion. [*See* Patel Decl. ¶ 4 ("In my experience, accused infringers served with notice of an application for a temporary restraining order and/or preliminary injunction will attempt to destroy evidence in their possession in an effort to hide their wrongdoing.").]

Furthermore, it appears that notice to the Defendants would not render fruitless the further prosecution of the action because Plaintiff already has in its possession several allegedly infringing products. Without voicing an opinion as to the veracity of this evidence, the Court simply points out that such evidence may already form the basis of a claim.

In sum, the Court finds that Plaintiff's conclusory argument and the statements made by its counsel are insufficient to justify the issuance of a TRO without notice to Defendants. While Plaintiff has filed affidavits and evidence in support of its motion, Plaintiff has failed to "clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*," as required for the issuance of an ex parte TRO. *See* Fed. R. Civ. P. 65(b) (emphasis added). Accordingly, because Plaintiff has not shown immediacy of harm, Plaintiff has not shown good cause to be excused from the notice requirement set forth in Rule 65(b)(1).

**B.     Ex Parte Seizure Orders under 15 U.S.C. § 1116**

Predicated on its claim under 15 U.S.C. § 1114(a), Plaintiff has requested an ex parte seizure order under 15 U.S.C. § 1116. Section 1116(d)(1)(A) provides that in counterfeit trademark cases arising under 15 U.S.C. § 1114(1)(a), a court may

issue an ex parte injunction "providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation." 15 U.S.C. § 1116(d) (1)(A); *Vuitton v. White*, 945 F.2d 569, 572 (3d Cir. 1991). "The purpose of the ex parte seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases." *Vuitton*, 945 F.2d at 575 (*quoting* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12080 (1984) ( "Joint Statement")). The courts are only to issue such orders where there is no other means by which to prevent those who deal in counterfeits from destroying or transferring evidence. *Id.*

Plaintiff states that the standard to be applied in determining whether to grant a seizure order ex parte is the same as that applied to an application for a preliminary injunction. [Mot. at 22.] While it is true that these requirements must be established, there are a number of other requirements under § 1116(d) that Plaintiff fails to address. For instance, under § 1116(d)(2), the movant must address whether the local United States attorney should received notice.

> The court *shall not* receive an application under this subsection unless the applicant has given such notice of the application as is reasonable under the circumstances to the United States attorney for the judicial district in which such order is sought. Such attorney may participate in the proceedings arising under such application if such proceedings may affect evidence of an offense against the United States. The court may deny such application if the court determines that the public interest in a potential prosecution so requires.

15 U.S.C. § 1116(d)(2) (emphasis added). In addition, the application "shall–(A) be based on an affidavit or the verified complaint establishing facts sufficient to support the findings of fact and conclusions of law required for such order; and (B) contain the" following information for use in the court's order: (1) findings of fact and conclusions of law; (2) a description of the matter to be seized and its location; (3) the seizure date; (4) the security required; and (5) the post-seizure hearing date. *Id.* §

1116(d)(3), (d)(5).

Further, "[t]he court shall not grant such an application unless–" the applicant posts adequate security as a court determines; and "the court finds that it clearly appears from specific facts that": (1) only an ex parte seizure order will achieve the purposes of § 1114; (2) the applicant has not publicized the requested seizure; (3) the applicant is likely to succeed in showing the person against whom seizure would be ordered used a counterfeit mark in violation of § 1114; (4) an immediate and irreparable injury will occur if such seizure is not ordered; (5) the matter to be seized will be located at the place identified in the application; (6) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and (7) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person. *Id.* § 1116(d)(4); *Vuitton*, 945 F.2d at 574 n.5.

In light of these requirements, the Court finds that Plaintiff has failed to meet its burden to demonstrate that a seizure order is appropriate. Indeed, Plaintiff's motion papers nearly entirely fail to address any of the requirements listed above. Thus, the Court **DENIES** Plaintiff's ex parte seizure request.

**C.    Substitute Custodian Order**

Plaintiff requests that the Court appoint The Patel Firm, P.C., as custodian over any goods seized. [Mot. at 23.] However, because the Court denies Plaintiff's request for an ex parte seizure order, Plaintiff's request for a substitute custodian order is **DENIED**.

**D.    Request For An OSC Why A Preliminary Injunction Should Not Issue**

Although Plaintiff is not entitled to an ex parte TRO, given the declarations submitted by Plaintiff and the evidence attached thereto, which raise serious allegations of trademark and copyright infringement, the Court will issue an

evidence preservation order and set an expedited briefing schedule for a hearing regarding Plaintiff's request for a preliminary injunction.  Accordingly, Plaintiff's request for an OSC why a preliminary injunction should not issue is **GRANTED**.

**E.      Request To File The Action Under Seal**

In light of the Court's findings, the Court **DENIES** Plaintiff's request to file the action under seal.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's application to file the action under seal is **DENIED**.
2. Plaintiff's request for an ex parte TRO is **DENIED**.
3. Plaintiff's request for an ex parte seizure order is **DENIED**.
4. Plaintiff's request for a substitute custodian order is **DENIED**.
5. Plaintiff's request for an OSC why a preliminary injunction should not issue is **GRANTED**.  Plaintiff shall serve Defendants with all documents filed in this matter, including the complaint, the instant applications, and this Order by ***July 8, 2013***, and provide proofs of service to the Court by ***July 11, 2013.***  Once these documents are timely served on Defendants, Plaintiff may contact the Court to schedule an OSC hearing on the request for a preliminary injunction.
6. The Court **ORDERS** Defendants to take reasonable steps to preserve any and all records or documents, as defined in Federal Rule of Civil Procedure 34(a)(1)(A), of the following products, in their possession, custody, or control now or that come into their possession custody, or control hereafter, whether apparently legitimate or counterfeit: products that bear Plaintiff's Starbuzz Marks, as set forth in Plaintiff's complaint and exhibits attached thereto.

/ / /

/ / /

/ / /

/ / /

7. The Court will reconsider Plaintiff's request for an expedited discovery after Defendants have had the opportunity to brief this issue and the Court has ruled on Plaintiff's request for a preliminary injunction.

**IT IS SO ORDERED**.

DATED: July 2, 2013

*[signature]*

Hon. Michael M. Anello
United States District Judge